FILED
 2013 Sep-25  AM 11:27
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **DECARLO PATRICIA MERCHANT,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| v. | ) Civil Action No. 2:12-CV-2121-KOB |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social,** | ) |
| **Security Administration** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

## I.  INTRODUCTION

On April 17, 2009, the claimant, Decarlo Merchant, applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (R. 104-08). The claimant alleged disability commencing on April 1, 1998 because of neck and back pain. (R. 174).  The commissioner denied the claims. (R. 61, 66). The claimant filed a timely request for a hearing before an Administrative Law Judge (ALJ), and the ALJ held a hearing on September 14, 2010. (R. 20, 39).  At the hearing, the claimant, through her attorney, amended her onset date to April 16, 2009, dismissing her Title II claim. (R. 40).  In a decision dated October 8, 2010, the ALJ found that the claimant was not disabled as defined by the Social Security Act and thus was ineligible for supplementary security income.  (R. 20).  On April 9, 2012, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 1-3).  The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons stated below, this court affirms the decision of the

Commissioner.

## II. ISSUES PRESENTED

The claimant presents the following issues for review:

(1) whether the ALJ properly applied the Eleventh Circuit's pain standard in evaluating the claimant's subjective pain;
(2) whether the ALJ gave proper weight to Dr. Banu's medical opinion on the claimant's parking disability form and the opinion of Ms. McCary, a nurse practitioner, on the claimant's food stamp form; and
(3) whether the ALJ had a duty to re-contact either Dr. Banu or Ms. McCary.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. But this court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings." *Walker*, 826 F.2d at 999. A reviewing court must look not only to those parts of the record that support the decision of the ALJ, but also must view the

2

record in its entirety and take into account evidence that detracts from the evidence on which the ALJ relied. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

### IV.  LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To make this determination the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant demonstrated an underlying medical condition, and *either* "(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition *or* (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R.

§ 404.1529. Subjective testimony can satisfy the pain standard if it is supported by medical evidence. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The ALJ must articulate reasons for discrediting the claimant's subjective testimony. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). If the ALJ does not articulate reasons, the court must accept the claimant's testimony as true. *Id.*

In evaluating a medical opinion, an ALJ must consider multiple factors outlined in the federal regulations. *See* 20 C.F.R. §§ 404.1527, 416.927. The ALJ must consider all medical opinions but does not have to give special deference to an opinion from a single consultation. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Non-medical doctors are not entitled to the same weight as a medical doctor. *Crawford v. Commissioner*, 363 F.3d 1155, 1160 (11th Cir. 2004). Although a nurse practitioner cannot establish an impairment, a nurse practitioner may give evidence of the severity of the claimant's impairments and their effect on the ability of the claimant to work. See 20 C.F.R. §§ 404.1513(a), 404.1513(d)(1).

The Commissioner must accord the opinions of the treating physician with substantial or considerable weight, and unless recounting *good cause* to the contrary, the commissioner cannot discount the treating physician's opinions. *Lamb v. Brown*, 847 F.2d 698, 703 (11th Cir. 1998). Good cause exists if the physician's opinion is not supported by evidence; the evidence supports a contrary finding; the physician's opinion is conclusory; or the physician's opinion is inconsistent with the doctor's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); 20 C.F.R. § 416.927

For an ALJ to have a duty to re-contact a doctor, the doctor must be a treating source; the treating source's opinion must be unclear on an issue reserved for the commissioner; and the ALJ

must not be able to ascertain the basis for the opinion from the record. SSR 96-5p. Even when a duty to re-contact arises, the ALJ only has a duty to make a reasonable effort to re-contact the treating source. *Id.* A treating source is "your own physician, psychologist, or other acceptable medical source." 20 C.F.R. § 404.1502. An acceptable medical source is a licensed physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist, or qualified speech pathologist. 20 C.F.R. § 404.1513(a)(1)-(5). To qualify as a treating source, the claimant must have "an ongoing medical relationship" with the source, or the claimant must see the source consistent with the normal medical practice required for the claimant's medical condition. 20 C.F.R. § 416.902. The claimant has the burden to produce evidence supporting a claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

## V.  FACTS

The claimant is a high school graduate and was 44 years old at the time of the administrative hearing. (R. 42-43). Her past work experience includes driving a truck and filling drink machines for Coca-Cola from 1996 to 1997. The claimant alleges she is unable to work because of neck pain and back pain stemming from an automobile accident that occurred while she worked for Coca-Cola. (R. 117-120).

*Physical Limitations*

In 1997, the claimant sustained injuries while working as a truck driver for Coca-Cola. (R. 46, 142). Subsequently, she visited Methodist Central Hospital in Memphis, Tennessee on June 20, 1997. (R. 119-120). After the injury, the claimant saw Dr. Kevin Geagan, a Chiropractor, beginning in February 1998 for injuries related to the accident. The claimant's last visit to Dr. Geagan was June 11, 1998. (R. 119, 150).

On April 28, 2009, the claimant submitted a function report describing her limitations. She stated that she has trouble standing, bending, lifting, walking, and sleeping; has difficulty bathing, walking more than half a block, and standing for more than a few minutes; and she cooks, cleans, shops, and helps prepare her granddaughter for school. The claimant indicated that she supports her son who is in the tenth grade; goes outside about five days a week to get her granddaughter off of her school bus; and she shops about twice a month. (R. 151-158).

On June 10, 2009, the claimant, at the request of the Social Security Administration, visited Dr. Decontee Jimmeh, a consulting physician, complaining of neck and back pain. She described her pain as a nine or ten since 1997 and stated that prolonged activity aggravated her symptoms. Dr. Jimmeh found that when the claimant raises her legs to 30 degrees, she has a burning sensation in her lower back, but the sensation does not radiate to her legs. Dr. Jimmeh's notes state that the claimant could walk well and sit comfortably. Also, Dr. Jimmeh assessed the claimant's motor strength as 5/5 throughout her upper and lower extremities bilaterally, and an organ system review was "grossly negative" except for the claimant's claims of neck and back pain. Dr. Jimmeh diagnosed the claimant with lower back pain possibly secondary to degenerative joint disease. (R. 174-177).

On September 28, 2009, the claimant visited Ms. Janet McCary, a nurse practitioner at Cooper Green Hospital.  Ms. McCary noted that the claimant stated she had intermittent pain down her leg and foot. The claimant rated her pain as a ten out of ten. Ms. McCary noted that the claimant did not want to participate in physical therapy and was in no acute distress. Upon physical examination, Ms. McCary noted the claimant's neck was firm and supple, and stated the claimant had mild to moderate tenderness at the L-5 spine. The claimant was diagnosed with

hypertension, neck pain, and back pain. Ms. McCary prescribed Norvasc and Maxzide for the claimant's hypertension. She prescribed Flexeril and Ultram for the claimant's back and neck pain. (R. 191).

Also on September 28, 2009, Dr. Shirin Banu completed an application for disability parking privileges on behalf of the claimant. Dr. Banu indicated that the claimant had a long term disability because she could not walk two hundred feet without stopping to rest. (R. 208).

On October 13, 2009, Ms. McCary completed a food stamp form on behalf of the claimant. On the form, Ms. McCary stated that the claimant could not work because of chronic neck and back pain and stage II hypertension. Ms. McCary indicated she believed it was a permanent condition. (R. 207).

On October 26, 2009, the claimant visited Ms. McCary for a follow up appointment. The claimant reported a pain level of zero. Ms. McCary noted a generally depressed appearance. However, Ms. McCary decided to monitor the claimant and not prescribe depression medication. Ms. McCary took the claimant off Maxzide and put her on Atenolol for her hypertension. (R. 190)

On December 31, 2009, the claimant visited Ms. McCary for a follow up appointment. The claimant reported a pain level of eight. Ms. McCary noted the claimant seemed to be in no acute distress, but the claimant had shortness of breath and swelling in her legs. Ms. McCary discontinued Norvasc and added Avapro for the claimant's hypertension. Ms. McCary noted that she discussed sending the claimant to physical therapy, but the claimant refused. Ms. McCary added Elavil to the claimant's medication for her back pain. (R. 189)

On February 26, 2010, the claimant visited Ms. McCary for a follow up appointment. The

claimant reported a pain level of zero. Ms. McCary noted that the claimant looked depressed. The claimant denied being depressed and reported that she normally sleeps well. Ms. McCary noted that the claimant was not in any acute distress. (R. 202).

On April 23, 2010, the claimant visited Ms. McCary for a follow up visit. The claimant reported a pain level of three. Ms. McCary noted no acute distress and did not change the claimant's medication. (R. 201).

On May 18, 2010, the claimant visited the gynecology clinic at Cooper Green Hospital. The claimant reported her pain as a zero on a scale of zero to five. Notes indicate that the claimant had no complaints and was in no acute distress. (R. 199).

On June 10, 2010, the claimant visited the gynecology clinic at Cooper Green Hospital and reported no complaints. (R. 198)

### *The ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 73-74, 82). At the hearing, the claimant testified that she had pain in her neck and back stemming from a car accident in 1997. The claimant testified during the hearing that her pain was a nine on a scale of one to ten. (R. 43-45).

The claimant testified that she could stand for fifteen minutes before sitting down and sit for fifteen to thirty minutes before having back and neck pain. She testified that she could walk half a city block before resting. She also testified that she could lift a gallon of milk for a short amount of time and it hurts her back and neck when she bends over. The claimant stated she has trouble sleeping at night and lays down approximately six to eight hours during the day. (R. 45).

The claimant also testified that she lives with both her seventeen year old son and her seven year old granddaughter. The claimant stated she has had custody of her granddaughter since birth. She stated she prepares her granddaughter for school each morning. The claimant testified that she does not go out often, but her friends and family take her to the grocery store and doctor's appointments when necessary. She also has a male friend who visits twice a week. (R. 47-50).

A vocational expert, Mr. Peacock, testified concerning the classification of the claimant's past work and what skills the claimant possesses. He classified the claimant's work at Coca-Cola as medium and semiskilled. He testified someone of the claimant's age, education, and work experience would be allowed to miss two days of work per month, and the claimant could go back to her previous work. Further, Mr. Peacock testified that if the claimant could not go back to her previous level of work, the claimant could perform other light, unskilled jobs available nationally and in Alabama. He cited ticket takers and counter attendants as examples of jobs the claimant could perform. Mr. Peacock also testified that if the claimant's assessment of her own pain were correct, her pain would preclude her from work.  (R. 51-55).

*The ALJ's Decision*

On October 8, 2010, the ALJ issued a decision finding the claimant was not disabled under the Social Security Act. (R. 20).  First, the ALJ found the claimant met the insured status requirements through September 30, 2002.  Second, the ALJ found that the claimant had not engaged in substantial gainful activity since April 16, 2009, her amended onset date. (R. 22, 40).

Third, the ALJ found that the claimant suffered from the three severe impairments: hypertension; obesity; and mechanical back pain. The ALJ also noted the claimant's neck pain

9

but found that such pain did not stem from a severe impairment. The ALJ reasoned that Dr. Jimmeh, the consulting physician, only found slight decreases in lateral neck flexion, and Dr. Jimmeh found neck extension, forward flexion, and rotation were full. Also, the ALJ noted that no evidence in the record suggests that the claimant has upper extremity sensory loss. The ALJ determined the claimant's depression was not a severe impairment. He noted that Ms. McCary chose not to treat the claimant for depression. The ALJ reasoned that the claimant submitted no medical records to indicate that she had a listing level impairment. (R. 22-23).

Fourth, the ALJ found that the claimant did not have an impairment or combination of impairments that meets or medically equals a listing. The ALJ stated that the claimant did not assert a listing level impairment, and the medical record did not establish a condition of listing severity. (R. 23).

Fifth, the ALJ found that the claimant had the residual functional capacity to perform medium work. The ALJ considered the entirety of the record to evaluate the subjective pain claims of the claimant. He stated he used a two step process. First, the ALJ determined "whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques–that could reasonably be expected to produce the claimant's pain or other symptoms." Second, when a physical or mental impairment is present that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ "must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms." The ALJ stated that when there is no objective medical evidence, he must make a determination based on credibility of the statements while considering the record as a whole. (R. 23-24).

The ALJ reasoned that the claimant's medical history and the opinions of Ms. McCary, the claimant's nurse practitioner, and Dr. Banu did not constitute adequate medical evidence of disability. The ALJ found that the claimant has medically determinable impairments that could cause her pain, but he did not find her statements regarding the severity of her pain credible. First, the ALJ noted the claimant did not see a doctor about her pain between 1998 and 2009 even though affordable medical treatment was available. In the intervening years, the ALJ noted the claimant cared for her son and grandchild and performed daily household activities. The ALJ also noted the claimant's inconsistent pain levels ranging from zero to ten. (R. 24-25)

Next, the ALJ noted Dr. Jimmeh's examination of the claimant. The ALJ stated Dr. Jimmeh found 5/5 muscle strength, tone, and bulk. He reasoned that the evidence of muscle tone indicated the claimant was physically active. Also, the ALJ noted the claimant's report of daily activities was inconsistent with the severe pain asserted by the claimant. (R. 24-25).

Finally, the ALJ analyzed the medical opinions of Dr. Banu and Ms. McCary. The ALJ gave "little to no weight" to the opinion of Dr. Banu. He stated the claimant provided no evidence of the nature and length of Dr. Banu's relationship with the claimant. The ALJ noted the claimant submitted no medical records from Dr. Banu except the parking disability form. The ALJ gave limited weight to Ms. McCary's statement of long term disability. The ALJ reasoned that when Ms. McCary stated the claimant could not work, the claimant had only visited Ms. McCary once. Also, the ALJ noted the inconsistent pain levels reported by the claimant to Ms. McCary in later visits. (R. 25).

Sixth, the ALJ concluded that the claimant could return to her previous work as a Coca-Cola route driver. The ALJ relied on his residual functional capacity finding and the vocational

expert's testimony to support the conclusion. The vocational expert classified the claimant's previous work as medium, consistent with the ALJ's evaluation of the claimant's residual functional capacity. Even if the claimant could not return to her previous work, the ALJ concluded that the claimant could perform light work under the Medical-Vocational Guidelines. The ALJ considered the claimant's residual functional capacity, age, education, and work experience as well as the vocational expert's testimony to establish alternate jobs the claimant could perform. The ALJ found that the claimant could perform the unskilled, light occupations of cashier, ticket taker, or counter worker. The vocational expert testified the jobs were all significant regionally and nationally. (R. 25-27).

Seventh, the ALJ concluded that the claimant was not under a disability under the Social Security Act. (R. 27)

## VI.  DISCUSSION

**A. Application of the Eleventh Circuit's Pain Standard**

The claimant argues that the ALJ improperly applied the Eleventh Circuit's pain standard. To the contrary, this court finds that the ALJ properly applied the pain standard and that substantial evidence supports his decision.

The pain standard applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. *Holt*, 921 F.2d at 1223.  "The pain standard requires (1) evidence of an underlying medical condition and *either* (2) objective medical evidence that confirms the severity of the alleged pain arising from the condition *or* (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* (emphasis added).  A claimant's subjective

testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Foote*, 67 F.3d at 1561.

In applying the pain standard, if the ALJ decides not to credit a claimant's subjective testimony of pain, he must discredit it explicitly and articulate his reasons for doing so. *Brown*, 921 F.2d at 1236. Failure to articulate the reasons for discrediting the claimant's subjective complaints of pain requires that the testimony be accepted as true. *Id.*

In this case, the ALJ conceded that the claimant suffers from underlying medical conditions capable of generating pain; however, he found that the entirety of the medical evidence failed to support the claimant's alleged severity of pain. (R. 24)

The ALJ explicitly articulated his reasons for discrediting the claimant's alleged severity of pain. First, he noted that the claimant contends her pain has been nine out of ten since 1997. However, the claimant did not see a physician to discuss her pain any time after she ceased seeing her chiropractor in 1998. During those eleven years, the claimant cared for her son and granddaughter. The ALJ reasoned that there was cheap medical help available to the claimant, and she chose not to seek it out. (R. 24)

Second, the ALJ noted consulting physician Dr. Jimmeh's findings during the June 2009 examination that the claimant had no signs of muscle atrophy from lack of use. The claimant's muscle tone, strength, and bulk indicated she was physically activity. (R. 24)

Third, the ALJ noted that treatment notes from Cooper Green do not adequately substantiate the claimant's stated pain level. The ALJ referenced the claimant's inconsistent reports of her pain level between a ten in September 2009, a zero in October 2009, an eight in December 2009, and a zero February 2010. The claimant continued to report low pain levels

following February 2010. (R. 25)

Because the ALJ specifically articulated his reasons for discrediting the claimant's subjective testimony of pain, this court concludes that he properly applied the Eleventh Circuit's pain standard and that substantial evidence supports his decision.

## B. Consideration of the opinions of Dr. Banu and Ms. McCary

The claimant argues that the ALJ did not give proper weight to the medical opinions of Dr. Banu and Ms. McCary. To the contrary, this court finds that the ALJ properly articulated his reasons and substantial evidence supports the weight the ALJ gave to their medical opinions.

The law in this circuit is well established that the Commissioner must accord the opinions of the treating physician with substantial or considerable weight. *Lamb*, 847 F.2d at 703. Absent a showing of good cause to the contrary, the commissioner cannot discount the treating physician's opinions. *Id.* Good cause exists if the physician's opinion is not supported by evidence, the evidence supports a contrary finding, the physician's opinion is conclusory, or the physician's opinion is inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. An ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). However, the ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion. *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (emphasis added). If the ALJ decides to discount the opinion of the treating physician, he must "clearly articulate" his reasons for doing so. *Phillips*, 357 F.3d at 1241.

The ALJ must consider all medical opinions but does not have to accord an opinion arising out of single consultative examination the special deference he must give to a treating

physician's opinion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). An ALJ does not have to give the same weight to non-medical doctors that is given to medical doctors. *Crawford v. Commissioner*, 363 F.3d 1155, 1160 (11th Cir. 2004).

The ALJ explicitly stated he gave "little to no weight" to Dr. Banu's opinion on the claimant's Application for Disability Access Parking. The ALJ gave two reasons for this determination. First, the ALJ noted that Dr. Banu did not submit any medical evidence other than the parking disability form. Second, without any additional medical evidence, the ALJ could not determine the nature and extent of the claimant's relationship with Dr. Banu. An ALJ may give less weight to a medical opinion that is not supported by medical evidence. 20 C.F.R. § 416.927.

The ALJ stated he gave "limited weight" to Nurse Practitioner McCary's statement on the October 19, 2009 DHR Food Stamp Program form that the claimant has a permanent disability. (R. 25) As a nurse practitioner, Ms. McCary does not qualify as a treating physician under federal regulations because a treating physician must be an acceptable medical source. An acceptable medical source is a licensed physician, licensed or certified psychologist, licensed optometrist, licensed podiatrist, or qualified speech pathologist. 20 C.F.R. § 404.1513(a)(1)-(5). Thus, Ms. McCary cannot provide evidence to establish an impairment. *See* 20 C.F.R. § 404.1513(a). However, a nurse practitioner may give evidence to the severity of the claimant's impairments and their effect on the claimant's ability to work. 20 C.F.R. § 404.1513(d)(1). Therefore, while Ms. McCary cannot establish the claimant's back pain, her medical records can be used to establish the severity of the claimant's pain.

The ALJ gave three reasons for giving less weight to Ms. McCary's opinion. First, at the time Ms. McCary signed the claimant's food stamp form, Ms. McCary had only seen the

claimant once. Second, the ALJ noted that one week after Ms. McCary completed the form, the claimant reported a pain level of zero. Third, the ALJ noted that neither the September nor October 2009 musculoskeletal examinations performed by Ms. McCary showed evidence of the type of pain the claimant asserts. (R. 25) The ALJ's reasons are permissible because they fall within the factors for considering a medical opinion listed in the regulations. *See* 20 C.F.R. §§ 404.1527, 416.927.

Based on the ALJ's explicit statement of his reasons grounded in the record for giving less weight to Dr. Banu and Ms. McCary's opinion, this court concludes that the ALJ correctly applied the legal standard and that substantial evidence supports his decision.

## C. Duty to Re-contact Dr. Banu and Ms. McCary

The claimant argues that the ALJ erred because he did not re-contact Dr. Banu or Nurse Practitioner McCary. Claimant's Br. 7-8. However, the ALJ did not err by not re-contacting Dr. Banu or Ms. McCary.

A duty to re-contact arises when (1) the opinion is from a *treating* source; (2) the opinion is unclear on an issue reserved for the Commissioner; and (3) the Commissioner cannot determine the basis for the opinion from the record. SSR 96-5p (emphasis added). A "treating source" is one who provides you . . . with medical treatment . . . *and* who has, or has had an ongoing treatment relationship with you." 20 C.F.R. § 416.902 (emphasis added). An ongoing treatment relationship is with someone the claimant "sees or ha[s] seen with frequency consistent with the accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.* The claimant has the burden to produce evidence supporting a claim. *Ellison*, 355 F.3d at 1276.

No medical records indicate that Dr. Banu had an ongoing relationship with the claimant. The only evidence from Dr. Banu is the parking disability form he completed at the claimant's request. Therefore, because there is not evidence to support the claim that Dr. Banu is a treating physician, the ALJ had no duty to re-contact Dr. Banu, even if the other factors applied.

The claimant also argues that the ALJ erred by not re-contacting Nurse Practitioner McCary. Claimant's Br. 7-8. The claimant is correct in stating that the opinion of a medical source may not be ignored. SSR 96-5p. However, one of the requirements of a duty to re-contact is that the medical opinion is from a "treating source." *Id.* Ms. McCary is not a "treating source" as defined in the regulations. A treating source is "your own physician, psychologist, or other acceptable medical source." 20 C.F.R. § 404.1502. An acceptable medical source is a licensed physician, licensed or certified psychologist, licensed optomotrist, licensed podiatrist, or qualified speech pathologist. 20 C.F.R. § 404.1513(a)(1)0(5). As a nurse practitioner, Ms. McCary is not an acceptable medical source as defined in 20 C.F.R. § 404.1513(a). Because she is not a treating source, Ms. McCary's medical opinion does not trigger a duty to re-contact for the ALJ.

This court concludes that the ALJ did not err by not re-contacting Dr. Banu or Ms. McCary. Therefore, this court affirms the decision of the Commissioner.

### VII.  CONCLUSION

For the reasons above stated, this court concludes that the decision of the Commissioner is supported by substantial evidence and is to be AFFIRMED.  The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 25th day of September, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE